UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Robbie Collins, # 290946, | ) C/A No.: 2:12-3112-DCN-BHH |
| Plaintiff, | ) |
| | ) |
| | ) |
| vs. | ) |
| | ) Report and Recommendation |
| Anthony Padula, Warden; | ) |
| Michael McCall, Warden; | ) |
| Sgt. Keith McBride; | ) |
| Lt. Jason Davis; | ) |
| Cleveland Demarie; | ) |
| A/W NFN Brooks; | ) |
| Bruce Oberman; | ) |
| Sgt. Charlie Brown; | ) |
| Ms. Desai, Librarian; | ) |
| Herman Finkley; | ) |
| James Dean; | ) |
| Lt. Buterbaugh; | ) |
| Nurse McDonald; | ) |
| Capt. Thomas Commander; | ) |
| Dr. Pate; | ) |
| W. Miller, Librarian; | ) |
| Nurse Stephanie Brown; | ) |
| Nurse Linda Roman; | ) |
| Nurse T. Hubbard; | ) |
| Officer McConico; and | ) |
| Nurse Norah, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

The Plaintiff, currently a state prisoner, is proceeding *pro se*. Plaintiff filed this action

pursuant to Title 42, United States Code, Section 1983 concerning events he alleges

occurred at the Lee Correctional Institution ("LCI"). This matter is before the Court upon

Defendants' Motion for Summary Judgment, (Dkt. No. 75), and Plaintiff's Motion for

Summary Judgment, (Dkt. No. 63). Pursuant to the provisions of Title 28, United States

1

Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

## PROCEDURAL HISTORY

The Plaintiff brought this action on or about October 29, 2012. (Dkt No. 1).[1] Beginning on February 13, 2013 and continuing through June 18, 2013, Plaintiff filed numerous Declarations and Supplements to his Complaint. (Dkt. Nos. 37, 42, 43, 44, 49, 56, 77, and 80.) Plaintiff also submitted Letters to the Clerk of Court which contain various documents filed in support of his Complaint. (Dkt. Nos. 45, 50).

On April 29, 2013, Plaintiff filed a Motion for Summary Judgment. (Dkt. No. 63). A week later, Plaintiff filed a Supplement to his Motion for Summary Judgment. (Dkt. No. 64). On May 20, 2013, Plaintiff filed a Second Supplement to his Motion for Summary Judgment. (Dkt. No. 70). Defendants filed their Response in Opposition to Plaintiff's Motion for Summary Judgment on June 14, 2013. (Dkt. No. 76).

Defendants also filed a Motion for Summary Judgment on June 14, 2013. (Dkt. No. 75). By order filed June 17, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to Defendants' motion. (Dkt No. 78). Plaintiff filed his Response in Opposition to Defendants' Motion for Summary Judgment on or about June 25, 2013. (Dkt. No. 82). Plaintiff also filed a Supplement to his Response in Opposition to Defendants' Motion for Summary Judgment. (Dkt. No. 83).

---

[1] On January 9, 2013, Plaintiff filed a Motion for Preliminary Injunction. (Dkt. No. 21). The Honorable Cameron M. Currie, United States District Judge, denied Plaintiff's motion in an order dated August 15, 2013. (Dkt. No. 92.)

2

## THE COMPLAINT

Plaintiff, Robbie Collins, who at all times relevant to his Complaint was incarcerated at LCI, brings this action alleging that Defendants violated his Constitutional rights. On February 16, 2012, Plaintiff alleges he received an Order from the Supreme Court of South Carolina directing him to "provide a[n] explanation with sufficient facts[,] argument and citations." (Dkt. No. 1, p. 3). An attachment to the Complaint reveals that Plaintiff was advised that a circuit court had determined that his application for post-conviction ("PCR") relief was barred as successive and untimely. (Dkt. No. 1-1, p. 1). In order to appeal the denial of his PCR, Plaintiff was advised that Rule 243(c), SCACR, required him to provide a written explanation as to why the determination was improper. Id.

Plaintiff alleges he submitted a "Request to Staff" asking for "the necessary cases to fulfill by court deadline...." (Dkt. No. 1, p. 3). Plaintiff further alleges he told Defendant McBride that he needed the law library, and claims he showed Defendants Demarie and Davis his court deadline, at which time he states he was assured he would receive law library access, but never did. Id. Plaintiff made numerous attempts to obtain access asking or writing Defendants Davis, McBride, Demarie, Brown, Oberman, Dean, Brooks, and Padula. Id. Plaintiff alleges that the law library cart arrived on February 29, 2012, but did not have his requested materials. Id. Plaintiff alleges he sought an extension from the Supreme Court, which was granted. Id. A copy of that Order, which Plaintiff attaches to his Complaint, shows that Plaintiff was advised that any further extension request would require a showing of good cause. (Dkt. No. 1-1, p. 2).

Plaintiff maintains he continued to be refused access to the law library by Defendants McBride, Oberman, Davis, Demarie, Dean, Brooks, Brown, and Padula. (Dkt.

3

No. 1, p. 3). Plaintiff sought a second extension, explaining that he had been denied access to the law library. He alleges his request for another extension was denied, and his case was dismissed. Id.

Plaintiff attaches the dismissal order from the Supreme Court of South Carolina to his Complaint. (Dkt. No. 1-1, p. 3). A review of that Order reveals, in part, that Plaintiff submitted a brief indicating that he was withdrawing his allegation of ineffective assistance of PCR counsel, and argued the recantations of his co-defendants would change the result of his trial. Plaintiff also argued that his co-defendants provided information which is material to his innocence, and could not have been discovered before trial.  Id.

Plaintiff alleges the Supreme Court found that he had failed to show good cause warranting another extension of time. They also treated Plaintiff's brief as his Rule 243(c) explanation, and found it insufficient to show the PCR (post-conviction relief)  judge's determination was improper. Id.

Plaintiff alleges he wrote Defendant McCall on two separate occasions, explaining his case had been dismissed, and asking him to write a letter to the Court explaining it was "the institution's fault." (Dkt. No. 1, p. 3). Plaintiff also filed six (6) grievances and a request explaining he was not receiving access to the law library. In all instances he alleges he did not receive replies. Id. at 3-4.

In a "Supplement" filed by the Plaintiff subsequent to the filing of the Complaint, Plaintiff attaches a response from the Warden regarding the receipt of law books. (Dkt. No. 49-1, p. 4). According to the response, Plaintiff was serviced for each Law Book Request Form that was received in the library on February 12, 2013, and February 20, 2013. Id.

Plaintiff raises a second allegation claiming he is not receiving the requisite number

4

of showers as set out in the special management unit ("SMU") policy. (Dkt. No. 1, p.  4). Plaintiff states he wrote Defendants McCall, Commander, Oberman, Brown, and Noli (not a defendant) and Richardson (not a defendant) without results. Id. In a "Supplement" filed subsequent to the Complaint, Plaintiff submits a grievance concerning showers, and also cold food,  (Dkt. No. 43-1, p. 2), and attaches the Warden's reply. Id. at 3. A review of the reply reveals, in part, that because Plaintiff is housed in a "Super-max" cell, he has a shower in his cell. The reply also advises the Plaintiff that staff assignments are made in the best interest of security and the sound operations of the facility and will not be dictated by inmates. Id.

Plaintiff further claims he has been denied adequate medical attention. He states he has been to "sick call numerous times about [his] ears[,]" and was prescribed medication by Defendant Pate which caused increased pain in his ears. (Dkt. No. 1, p. 4). In a "Declaration" filed by Plaintiff on February 13, 2013, (Dkt. No. 37), Plaintiff alleges the medication prescribed for his ears gave him chest pains. He states he was taken off the medication due to dizziness, chest pains, and other complications. Id. at 2. When he returned to sick call, he was prescribed the same medication and complained to Defendants Brown, Hubbard, Roman, and Norah. Id. He also wrote requests to Defendant McDonald, Buterbaugh, and Roman,  complaining of pain. Id. Plaintiff indicates the pain prevents him from sleeping. (Dkt No. 44, p. 2).

In a response from the Warden, attached to Plaintiff's Complaint, concerning a grievance filed by the Plaintiff about the pain in his ears, the Warden indicated that Plaintiff had been seen by Dr. Drago on February 14, 2013, and was free to seek outside medical assistance at his own expense. (Dkt. No. 44, p. 3). Another response from the Warden,

5

submitted by the Plaintiff, reveals that on March 20, 2013 Plaintiff refused ear drops that were prescribed to him, and that is was unlikely Plaintiff would receive an outside referral when he was non-compliant with his medication. (Dkt. No. 56-1, p. 2).

Plaintiff opines that he has a partial loss of hearing in his left ear due to medical negligence. (Dkt. No. 1, p. 4). He states he filed grievances about Defendant McDonald and "the Medical Staff" in August but, at the time of filing, had not received a reply. He further claims he has filed "numerous grievances" but "has yet to receive any back on Step 2 (Appeal Process)." Id.

Finally, Plaintiff maintains he has been denied all books, radios, publications, and newspapers from SMU. (Dkt . No. 1, p. 5). He states his grievances concerning these matters are still pending. Id. Plaintiff filed a "Supplement" on June 14, 2013 which indicated, among other things, that beginning on May 21, 2012, radios and batteries were not permitted in SMU or in SMU lock-up bags. (Dkt. No. 77-1, p. 1).

In his prayer for relief Plaintiff seeks $50,000.00 so he may retain a private lawyer of his choice to restore his criminal case to the courts. Id. at 6. Plaintiff alleges that due to the denial of showers he has contracted a fungus on his feet and in his ears. Id. He seeks "[$]20,000[.00] dollars and whatever else relief the courts deem necessary. Also I would like [$]30,000[.00] for the damage to my ear and los[s] of partial hearing." Id.

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In Plaintiff's Motion for Summary Judgment, he states that he seeks damages and injunctive relief for a violation of his right to access the courts as well as "denial to medical care...." (Dkt. No. 63.) He claims he is the victim of "negligen[t] supervision," and cruel and unusual punishment. Id. at 1. Plaintiff reiterates in his motion the allegations that he raises

6

in his Complaint. Specifically, he alleges he was denied legal materials he requested in order to prepare for a pending state court matter. The motion also raises again his claims regarding the lack of access to a shower three (3) times a week in accordance with SCDC policy. Plaintiff alleges the showers were denied "because of the discriminatory work environment that the SMU Supervisor had instituted." Id. at 2. An additional claim raised in the motion concerns the denial of a radio and books from the general library while on "lock-up." Id. at 3. Plaintiff also maintains he is not receiving proper treatment for his earache. Id. Specifically, Plaintiff alleges he received medication and was seen on a number of occasions by different medical personnel, but he claims the medication he receives does not help him. He also alleges his condition is worsening. Id. at 3-4.

Plaintiff also complains about the Inmate Grievance System. He alleges that an SCDC employee who witnesses, or has knowledge of, any action taken by an inmate which violates the rules and regulations of SCDC must correct the behavior or fill out an incident report. Id. at 5. If no action is taken, Plaintiff maintains that SCDC takes the position that no violation occurred. Based on this premise, Plaintiff argues that SCDC is now estopped from arguing that Plaintiff had no access to the general library, showers, and/or medical attention because he violated rules and regulations. Id.

Plaintiff further alleges that Defendants are not entitled to qualified immunity because they are violating clearly established law. Id. According to the Plaintiff, Defendants have clearly violated his Eighth Amendment rights by denying him access to the library, failing to give him three (3) showers a week, and failing to provide him with adequate medical attention. Id.

Plaintiff alleges the Defendants are denying him his Constitutional rights out of a

7

"desire to retaliate and/or punish..." him. Id. at 6. He also claims the South Carolina Tort Claims Act does not shield the Defendants from their gross negligence. Id.

As it pertains to his right to access the courts, Plaintiff avers that prison authorities must assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. Id. at 7. Citing to Bounds v. Smith, 430 U.S. 817 (1977), Plaintiff states that he suffered an actual injury as a result of the failure of the Defendants to provide him with legal material. Id. Citing to Turner v. Safely, 482 U.S. 78 (1987), he argues that a ban on all books, radios, publications, and magazines is "logically unrelated to the legitimate security concerns of prison officials." Id. at 8.

In support of the issues raised in Plaintiff's Motion for Summary Judgment, Plaintiff attaches ninety-eight (98) pages of attachments. (Dkt. No. 63-1, pp. 1-98). The majority of these submissions are Step 1 grievances. Some pertain to the issues Plaintiff presents in his Complaint and in his Motion for Summary Judgment.

Plaintiff also submitted a one (1) page "Supplement" to his Motion for Summary Judgment on May 6, 2013, (Dkt. No. 64), requesting that twenty-six (26) pages of attachments be included in his original motion. The attachments were filed simultaneously with his "Supplement," (Dkt. No. 64-1, pp. 1-26), and consist of additional grievances, declarations from other inmates, a copy of Defendants' Answers to Plaintiff's Request for Admission," and a copy of the SCDC policy, effective May 21, 2012 banning radios and batteries in SMU or SMU lock-up bags.

On May 20, 2013, Plaintiff filed a Second Supplement to his Motion for Summary Judgment, (Dkt. No. 70), requesting again that additional documents be appended to his

8

motion. One document concerns Plaintiff's request to see a specialist because he alleges he "cannot hear out of [his] ear." (Dkt. No. 70-1). Plaintiff also attaches more declarations from other inmates. (Dkt. No. 70-2, pp. 1-4).

Defendants filed their Response in Opposition to Plaintiff's Motion for Summary Judgment on June 14, 2013. (Dkt. No. 76). As an initial matter, Defendants argue that a number of documents and exhibits exceed the scope and topics of the Complaint and Amended Complaint.[2] Defendants state that they object to matters outside the issues raised in the scope and time frame of the pleadings. Defendants then list the ninety-seven (97) exhibits submitted by the Plaintiff. (Dkt. No. 76, pp. 3-6).

Defendants argue that Plaintiff is assigned to a special management unit ("SMU") because he has failed to follow the rules within the prison. SMU assignments assure the safety of the inmate as well as the safety of other inmates and the employees of the institution. Id. at 6. Defendants allege that Plaintiff was charged with exhibitionism and public masturbation on July 25, 2012. Defendants also maintain that Plaintiff flooded his cell with water on October 26, 2012. According to the Defendants, these incidents create impediments to prison staff who must perform duties like providing shower access and library services to inmates. Id.

Defendants also argue that Plaintiff is a "prolific user" of the prison grievance system. Defendants note that Plaintiff must fully exhaust his prison remedies prior to filing a lawsuit pursuant to the provisions of the Prison Litigation Reform Act ("PLRA").

---

[2]In addition to his Complaint, and Amended Complaint, Plaintiff has submitted to the Court for consideration several "supplements," or "declarations." These additional documents contain attachments/"exhibits."

Defendants claim that Plaintiff has failed to fully exhaust his administrative remedies pursuant to the PLRA, and point out he is currently engaged in the process available to him. Thus, they claim Plaintiff has filed his lawsuit prematurely, and that his Complaint must be dismissed as a matter of law. Id. at 7-8.

As for Plaintiff's claims that he has been denied access to the courts, Defendants argue that the Plaintiff must demonstrate an actual injury caused by the policy or procedure in effect at the place of incarceration, citing Lewis v. Casey, 518 U.S. 343, 349, 116 S. Ct. 2174, 135 L.Ed.2d 606 (1996). Defendants note that "[a]ctual injury cannot be established merely by conclusory statements that the inmate would have fared better in litigation had he or she had more or better access to legal research materials[,]" citing Jones v. Lexington County Detention Center, 586 F. Supp.2d 444, 448 (D.S.C. 2008). According to the Defendants, the single legal matter which Plaintiff points to is the dismissal of his application for post-conviction relief ("PCR"). Defendants maintain that Plaintiff's PCR was dismissed because it was successive and time-barred. Therefore, Defendants contend that Plaintiff's cause of action for the denial of access to the courts should be dismissed because the Plaintiff cannot allege any actual injury caused by the Defendants. Id. at 8.

Defendants also argue that Plaintiff has failed to establish that Defendants have been deliberately indifferent to his serious medical needs. Defendants cite Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), for the proposition that not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." Estelle, 429 U.S. at 105. Defendants also argue that Plaintiff is not entitled to the medical treatment of his choice, and that a disagreement about treatment does not state a claim for deliberate indifference. Id. at 9.

10

Finally, Defendants argue that there is no Constitutional right to a certain number of showers per week (citations omitted). In sum, for the foregoing reasons, Defendants believe that Plaintiff is not entitled to summary judgement.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In addition to their opposition to Plaintiff's Motion for Summary Judgment, Defendants filed a Motion for Summary Judgment, with accompanying Memorandum in Support, on June 14, 2013 (Dkt. No. 75). They have submitted the following attachments to their motion: (1) Inmate Grievance Application (Dkt. No. 75-2); (2) Physician's Transfer Note or Consultation (Dkt. No. 75-3); (3) Warden's Decision and Reason (Dkt. No. 75-4); (4) Inmate Grievance Form (Dkt. No. 75-5); (5) Physician's Transfer Note or Consultation (Dkt No. 75-6); (6) SCDC Medication Administration Record (Dkt. No. 75-7); and (7) Hunger Strike Flow Sheet (Dkt. No. 75-8).

As an initial matter, Defendants argue that Plaintiff has failed to receive a response to any Step 2 grievance he has filed. Id. at 1-2. Defendants also claim Plaintiff's state law claims may not be brought against them under the South Carolina Tort Claims Act ("SCTCA").

Proceeding to the merits of Plaintiff's federal claims, Defendants generally make the same arguments offered in their Response in Opposition to Plaintiff's Motion for Summary Judgment. (Dkt. No. 76.) Defendants further argue that since Plaintiff's complaints have been assessed by the Defendants, there has been no violation of Plaintiff's Eighth Amendment rights and therefore Defendants would be entitled to qualified immunity. (Dkt. No. 75-1 at 9-10.)

Finally, Defendants argue that because Plaintiff acknowledges that he is in

administrative segregation, "one shower per week does not violate the Eight[h] Amendment of the United States Constitution...." Id. at 10.

Based on the foregoing, Defendants ask that their Motion for Summary Judgment be granted.

Plaintiff filed his Response in Opposition to Defendants' Motion for Summary Judgment on or about June 25, 2013. (Dkt. No. 82). As an initial matter, Plaintiff argues that he has filed Step 2 grievances but alleges the Defendants have failed to answer them within the time frame set by SCDC policy. Consequently, Plaintiff argues that he has fully exhausted his administrative remedies. In support of this argument, Plaintiff notes that SCDC's policy concerning time limits states that if, at the institutional level, the response to the grievance exceeds the established time limits, the grievance will automatically proceed to the next level of appeal. Id. at 1-2.

Plaintiff also states in reply that he submitted a PCR application to the state Circuit Court raising new evidence in June 2010. He alleges the presiding Judge issued a conditional order of dismissal in August 2011. Plaintiff claims that when he filed his appeal with the South Carolina Supreme Court in February 2012 he was permitted to submit a brief in support of his claim of newly discovered evidence. Plaintiff alleges he was unable to do so because he was denied access to the law library. Plaintiff was granted an extension of time in which to file the brief, but again failed to do so because he believed he needed to access the law library in order to file his brief, and he was allegedly not given access. Plaintiff claims that a co-defendant "came forth with information that he would recant his testimony." According to the Plaintiff, the co-defendant testimony was the only evidence tying him to the crime. Thus, Plaintiff argues he is actually innocent. Id. at 2-3.

12

As for Plaintiff's medical claims, Plaintiff reiterates that his ear problem is serious, causes him pain, and is damaging his hearing. He also alleges he is not helped by the given medication which causes him to experience side effects. Plaintiff argues his repeated attempts at treatment have been thwarted, and he maintains the delays rise to the level of deliberate indifference. According to the Plaintiff, Defendants know they are in violation of clearly established law, and are therefore not entitled to qualified immunity. Id. at 3-4.

Plaintiff argues that he sometimes does not receive a shower for over 30 days. He claims he asked for production of the SMU log books and cell charts which would establish his claim. Plaintiff contends that because the Defendants failed to produce the requested documents he is entitled to judgment by default. Id. at 4.

Plaintiff further argues that Defendants "does not oppose [the denial to access of general library] allegation, which includes a complaint that all radios are banned from SMU. Plaintiff maintains he is entitled to the relief requested because Defendants failed to oppose his claim.

On July 8, 2013, Plaintiff filed a Supplement to his Response in Opposition to Defendants' Motion for Summary Judgment. (Dkt. No. 83). This document reads as follows: "Plaintiff asserts that Defendant has not shown any material fact to substantiate any of their claims, Furthermore. Defendants failed to propose a defense against [Plaintiff] not having access to the general library after Defendant David Michael McCall confiscated all radios. Plaintiff ask[s] that a trial be sought or that the courts rule in Plaintiff's favor granting him injunctive relief and 200,000$." (Dkt. No. 83-1).

## **APPLICABLE LAW**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment

13

"shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, the Defendants and the Plaintiff have each filed a Motion for Summary Judgment. The undersigned will consider the arguments presented in turn.

*1. Exhaustion*

The Defendants contend the Plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C.A. § 1997e states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life,

14

whether they involve general circumstances or particular episodes. In <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2380 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." <u>Id</u>. at 2380-81. (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. <u>Id</u>.

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." <u>Woodford</u>, 126 S.Ct. at 2385 (<u>quoting</u> <u>McCarthy v. Madigan</u>, 503 U.S. 140, 145, 112 S.Ct. 1081 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." <u>Id</u>. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

As an initial matter, Plaintiff concedes a number of points: first, Plaintiff admits he filed grievances about Defendant McDonald and "the Medical Staff" in August but, at the time of filing, had not received a reply. He further claims he has filed "numerous grievances" but "has yet to receive any back on Step 2 (Appeal Process)." (Dkt. No. 1, p. 4); second, in a "Supplement" filed subsequent to the Complaint, Plaintiff submits a grievance concerning showers, and also cold food, and attaches the Warden's reply, (Dkt. No. 43-1, p. 3), but provides no Step 2 grievance concerning this issue; third, Plaintiff

15

maintains he has been denied all books, radios, publications, and newspapers from SMU. He states his grievances concerning these matters are still pending. (Dkt. No. 1, p. 5). Fourth, Plaintiff alleges he wrote Defendant McCall on two separate occasions, explaining his case had been dismissed, and asking him to write a letter to the Court explaining it was "the institution's fault." (Dkt. No. 1, p. 3). Plaintiff also filed six (6) grievances and a request explaining he was not receiving access to the law library. In all instances he alleges he did not receive replies. Id. at 3-4.

Furthermore, Plaintiff argues that he has filed Step 2 grievances but alleges the Defendants have failed to answer them within the time frame set by SCDC policy. Consequently, Plaintiff argues that he has fully exhausted his administrative remedies. In support of this argument, Plaintiff notes that SCDC's policy concerning time limits states that if, at the institutional level, the response to the grievance exceeds the established time limits, the grievance will automatically proceed to the next level of appeal. (Dkt. No. 82, pp. 1-2). Plaintiff expresses this by stating he has "written several grievances on this matter, to no avail. They have made no effort to render any kind of ratification of my grievances." (Dkt. No. 1, p. 6).

Defendants counter that Plaintiff is a "prolific user" of the prison grievance system. Defendants note that Plaintiff must fully exhaust his prison remedies prior to filing a lawsuit pursuant to the provisions of the Prison Litigation Reform Act ("PLRA"). Defendants claim that Plaintiff has failed to fully exhaust his administrative remedies pursuant to the PLRA, and point out he is currently engaged in the process available to him. Thus, they claim Plaintiff has filed his lawsuit prematurely, and that his Complaint must be dismissed as a matter of law. (Dkt. No. 76, pp. 7-8). Specifically, Defendants argue that Plaintiff has failed

16

to receive a response to any Step 2 grievance he has filed. (Dkt. No. 75, pp. 1-2).

Although Defendants allege Plaintiff has not exhausted his administrative remedies, they provide no documentation or affidavits in support of their argument. Instead, Defendants rely solely on Plaintiff's admissions, and on their own unsupported statement that Plaintiff has not received a response to his Step 2 grievance. More importantly, they fail to address Plaintiff's claim that his grievances were ignored, making his administrative remedies unavailable to him. Because Defendants have failed to establish that Plaintiff's Step 2 grievances are being timely reviewed, and consequently are still unexhausted, the undersigned declines to recommend dismissal of the Complaint for failure to exhaust administrative remedies.

2. _Denial of Access to Courts_

Plaintiff's allegation that he has been denied his right of access to the courts because the Defendants failed to provide him access to the prison law library fails. Plaintiff cites to Bounds, supra, in support of his allegation, but Bounds "did not create an abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar [or unavailable] in some theoretical sense." See Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Indeed, there is no constitutional right to a law library or law books at all; the constitutional right is for meaningful access to the courts to bring challenges to sentences or conditions of confinement. Id.; Giarratano v. Johnson, 521 F.3d 298, 305 (4th Cir.2008)(same).

Thus, it is well settled that to state a cognizable claim for denial of meaningful access to the courts a prisoner must allege specific actual injury resulting from the alleged

17

denial. Lewis, 518 U.S. at 349-353 (holding that an inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure in effect at the place of incarceration in that his non-frivolous legal claim had been frustrated or was being impeded).

Plaintiff complains he was unable to comply with the Supreme Court of South Carolina's requirements as set forth in a notice he received from them. (Dkt. No. 1, p. 3). Plaintiff's claim for denial of access to the courts fails because Plaintiff has not established actual prejudice to his litigation. The record contains no evidence that Plaintiff's appeal was in fact dismissed because he failed to comply with the Supreme Court of South Carolina's notice. Although Plaintiff complains he was unable to comply with this notice because he was denied access to the prison library, Id., his claim was that he had new factual evidence to present, not legal evidence. Furthermore, Plaintiff fails to establish actual prejudice because Plaintiff's appeal was frivolous. As stated in Lewis,

> Not everyone who can point to some "concrete" act and is "adverse" can call in the courts to examine the propriety of executive action, but only someone who has been *actually injured*. Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value—arguable claims are settled, bought, and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.

Lewis, 518 U.S. at 353 n. 3; see also Morke v. Merritt, No. 98–1572–AM, 2000 WL 33949739, at *4 (E.D. Va. Sept. 7, 2000)("Lewis further qualified the right of access to the courts by concluding that inmates did not enjoy a right to file frivolous claims.").

As noted above, Petitioner's PCR action was a successive petition barred by the statute of limitations. As a result, the appeal was frivolous, and the instant

access-to-the-court claim fails. See Morke, 2000 WL 33949739, at *5 (finding an access-to-the-courts claim failed because "the questions of law Morke alleges he was unable to include in his petition for certiorari are frivolous and therefore he had no right of access to the courts to raise them"); Sheid v. U.S. Marshal Serv., No. 4:08cv03295, 2009 WL 1750379, at * 10 (S.D.Tex. June 17, 2009) (concluding inmate failed to state claim for denial of access to the courts where the alleged injury concerned the impairment of the ability to file a petition for a writ of certiorari on a federal habeas petition that was barred by the statute of limitations); Kennedy v. Lockett, No. 1:08cv00169, 2009 WL 1635923, at *8 (S.D.Ala. June 8, 2009) (concluding impairment of ability to litigate a procedurally barred state collateral attack could not support actual injury requirement); Jones v. Strong, No. 2:07cv00693, 2008 WL 2704758, at *2 (S.D.Ala. July 7, 2008)(same). As Plaintiff failed to establish an actual injury to a nonfrivolous pending case, the undersigned recommends granting summary judgment to Defendants on the claim for denial of access to the courts.

*3. Showers/Conditions of Confinement*

Plaintiff states he is not receiving the requisite number of showers as set out in the special management unit ("SMU") policy. (Dkt. No. 1, p. 4). Plaintiff states he wrote Defendants McCall, Commander, Oberman, Brown, and Noli (not a defendant) and Richardson (not a defendant) without results. Id. In a "Supplement" filed subsequent to the Complaint, Plaintiff submits a grievance concerning, among other things, showers, and attaches the Warden's reply. (Dkt. No. 43-1, p. 3). A review of the reply reveals, in part, that because Plaintiff is housed in a "Super-max" cell, he has a shower in his cell. The reply also advises the Plaintiff that staff assignments are made in the best interest of security and the sound operations of the facility and will not be dictated by inmates. Id.

19

Plaintiff's Motion for Summary Judgment, (Dkt. No. 63), also raises again his claims regarding the lack of access to a shower three (3) times a week in accordance with SCDC policy. Plaintiff alleges the showers were denied "because of the discriminatory work environment that the SMU Supervisor had instituted." Id. at 2. Plaintiff argues that he sometimes does not receive a shower for over 30 days. (Dkt No. 82, p. 4). He claims he asked for production of the SMU log books and cell charts which would establish his claim. Plaintiff contends that because the Defendants failed to produce the requested documents he is entitled to judgment by default. Id.

Defendants argue that there is no Constitutional right to a certain number of showers per week (citations omitted). (Dkt. No. 75-1, p. 10). Defendants also argue that because Plaintiff acknowledges that he is in administrative segregation, "one shower per week does not violate the Eight[h] Amendment  of the United States Constitution...." Id.

Plaintiff submits a response from the Warden that indicates that every effort is made to provide SMU inmates at least three (3) showers per week; however due to security concerns normal routines or schedules [may be] altered. (Dkt. No. 63-1, pp. 9, 23). Plaintiff also submits another response from the Warden concerning a grievance he filed pertaining to lack of showers. (Dkt. No. 63-1, p. 35). In that response, the Warden indicates that until the security concerns are resolved, inmates will be provided with a supply of "3 in 1 soap" in their cells on ... scheduled shower days...." Id.

Much of Plaintiff's complaint regarding showers appears centered on the allegation that he is not receiving three showers per week as mandated by SCDC policy. It is well settled, however, that failure to follow SCDC policy does not, in itself, amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio

v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

To the extent Plaintiff claims the denial of showers violates his Eighth Amendment rights, his claim fails for several reasons. Bathing opportunities may be severely reduced without violating a prisoner's constitutional rights. See, e.g., Shakka v. Smith, 71 F.3d 162, 167-68 (4th Cir. 1995) (rejecting inmate's claim that preventing him from showering for three days after having human excrement thrown on him constituted cruel and unusual punishment where the inmate acknowledged "he was provided with water and cleaning materials with which to clean himself and his cell immediately after informing prison officials of the assault"); Davenport v. DeRobertis, 844 F.2d 1310, 1316-17 (7th Cir.1988) (holding that allowing inmates only one shower per week did not violate constitutional rights); Ham v. McCall, Civ. A. No. 6:13-694-JMC, 2014 WL 51229, at *3-4 (D.S.C. Jan. 6, 2014) (granting summary judgment to the defendants where the plaintiff alleged, *inter alia*, two showers in September 2012; five showers in October 2012; three showers in November 2012; and two showers in December 2012, stating that "the facts are not sufficiently distinguishable from *Davenport* and other cases in which the opportunities to shower for inmates in segregated confinement were severely reduced"); Waring v. Meachum, 175 F. Supp. 2d 230, 241 (D. Conn. 2001) (citing Fisher v. Barbieri, 3:95CV913 (D.Conn. May 1999), which held there was no constitutional violation where showers were prohibited during a twenty-eight day lockdown).

Furthermore, to state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir.2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. See Strickler, 989 F.2d at 1380-81.

Assuming–without deciding–that Plaintiff can show a serious deprivation of a basic human need, Plaintiff's claim still fails. Plaintiff cannot meet the second prong, deliberate indifference, because Plaintiff's own filings indicate that Plaintiff has a shower in his cell and has received "3 in 1 soap." See Shakka, 71 F.3d at 167-68; Landman v. Royster, 333 F.Supp. 621, 650 (E.D. Va. 1971)("[t]here was evidence ... that some inmates were not permitted to shower during extended stays in solitary. Relief on this score will be denied because there is no proof that at such times they were also denied the necessary sanitary items so that they might wash in their cells."). Consequently, Defendants are entitled to

summary judgment on this claim.[3]

*4. Deliberate Indifference to Medical Needs*

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted). To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999)(deliberate indifference is a very high standard - a showing of mere negligence will not meet it).

Plaintiff claims he has been denied adequate medical attention. He states he has been to "sick call numerous times about [his] ears[,]" and was prescribed medication by Defendant Pate which caused increased pain in his ears. (Dkt. No. 1, p. 4). In a "Declaration" filed by Plaintiff on February 13, 2013, (Dkt. No. 37), Plaintiff alleges the

---

[3]Should the District Judge assigned to this case disagree, the undersigned further recommends finding that Defendants are entitled to qualified immunity on this claim. Although Plaintiff did not receive the number of showers he would have liked, Plaintiff is detained in SMU, and it is clear that he was not wholly deprived of showers but instead that the number of showers was curtailed. Furthermore, denial of showers on the facts as alleged by Plaintiff do not violate a clearly established right, given that Plaintiff was provided a method for maintaining personal hygiene. See Shakka, 71 F.3d at 167-68; Landman, 333 F.Supp. at 650.

medication prescribed for his ears gave him chest pains. He states he was taken off the medication due to dizziness, chest pains, and other complications. Id. at 2. When he returned to sick call, he was prescribed the same medication and complained to Defendants Brown, Hubbard, Roman, and Norah. Id. He also wrote requests to Defendants McDonald, Buterbaugh, and Roman, complaining of pain. Id. Plaintiff indicates the pain prevents him from sleeping. (Dkt No. 44, p. 2).

Plaintiff opines that he has a partial loss of hearing in his left ear due to medical negligence. (Dkt. No. 1, p. 4). He states he filed grievances about Defendant McDonald and "the Medical Staff" in August but, at the time of filing, had not received a reply. He further claims he has filed "numerous grievances" but "has yet to receive any back on Step 2 (Appeal Process)." Id.

One document submitted by the Plaintiff concerns his request to see a specialist because he alleges he "cannot hear out of [his] ear." (Dkt. No. 70-1). Plaintiff reiterates that his ear problem is serious, causes him pain, and he believes that his hearing has been damaged. He also alleges he is not helped by the given medication which causes him to experience side effects. Plaintiff argues his repeated attempts at treatment have been thwarted, and he maintains the delays rise to the level of deliberate indifference. According to the Plaintiff, Defendants know they are in violation of clearly established law, and are therefore not entitled to qualified immunity. (Dkt. No. 82, pp. 3-4).

Defendants reiterate that Plaintiff is not entitled to the medical treatment of his choice. Defendants argue that although Plaintiff may disagree with the type of medical treatment he is receiving, differences of opinion regarding a course of treatment do not state a deliberate indifference to medical needs claim. (Dkt. No. 76, p. 9). Defendants cite,

24

*inter alia*, to <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), for the proposition that not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." <u>Estelle</u>, 429 U.S. at 105.

Defendants have not met their burden of showing that they are entitled to summary judgment on Plaintiff's deliberate indifference claim. Rule 56(a) of the Federal Rules of Civil Procedure provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact *and the movant is entitled to judgment as a matter of law*." FED. R. CIV. P. 56(a) (emphasis added). In their Memorandum in Support of their Motion for Summary Judgment, Defendants cite the law on deliberate indifference but do not analyze Plaintiff's claims. (<u>See</u> Dkt. No. 75-1 at 7-8 of 11.) Defendants filed no affidavits with their motion. Defendants did attach the following to their motion: (a) documents related to grievances (Exhibit A (Dkt. No. 75-2); Exhibit C (Dkt. No. 75-4); Exhibit D (Dkt. No. 75-5); (b) two Physician's Transfer Note or Consultation forms (Exhibit B (Dkt. No. 75-3); Exhibit E (Dkt. No. 75-6); (c) what appears to be a medication log (Exhibit F (Dkt. No. 75-7); and (d) a document entitled "Hunger Strike Flow Sheet" (Exhibit G (Dkt. No. 75-8)). There are no medical records attached to Defendants' motion. (<u>See generally</u> Dkt. No. 75.) No affidavits or medical records were filed in response to Plaintiff's Motion for Summary Judgment. (<u>See</u> Dkt. No. 76.) Although Defendants filed some medical records at Dkt. No. 108-1, it appears likely those records are not a complete set of relevant medical records. Those records appear to go back to August of 2013, but Plaintiff's complaints and allegations of improper treatment go back much farther in time.

Defendants simply have not shown that they are entitled to summary judgment on Plaintiff's deliberate indifference claim. The record contains no affidavits supporting

Defendants' position, the two Physician's Transfer Note or Consultation forms Defendants did file with their motion are mostly illegible to the undersigned, and the medical records that are before the court appear incomplete. (Dtk. No. 75-3; Dkt. No. 75-6; Dkt. No. 108-1.) The undersigned therefore recommends denying–without prejudice–Defendants' Motion for Summary Judgment as to Plaintiff's deliberate indifference claim.[4]

5. *Publicatons/Radios/Books*

While prisoners do not forfeit all constitutional rights upon their imprisonment, Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), incarceration necessarily limits a prisoners' privileges and rights, which "arises both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (quoting Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); citing Pell v. Procunier, 417 U.S. 817, 822 (1974); Procunier v. Martinez, 416 U.S. 396, 412, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)). The Supreme Court has repeatedly upheld prison regulations restricting prisoners' First Amendment rights. See, e.g., Beard v. Banks, 548 U.S. 521, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006); Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); Bell, 441 U.S. 520,

---

[4]Because Defendants' motion is not properly supported, the undersigned cannot recommend concluding that Defendants are entitled to qualified immunity on the deliberate indifference claim. Should the District Judge agree that Defendants' motion must be denied as to Plaintiff's deliberate indifference claim, the undersigned recommends requiring Defendants to file–if at all–a more thorough and properly supported motion within thirty days of the District Judge's ruling on the current Motion for Summary Judgment. (Dkt. No. 75.)

Furthermore, in light of the instant recommendation as to Plaintiff's deliberate indifference claim, the undersigned recommends denying Defendants' Motion for Summary Judgment (Dkt. No. 75) as to state law claims at this time.

99 S.Ct. 1861, 60 L.Ed.2d 447. In <u>Turner</u>, the Court explained that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. The Supreme Court articulated four factors to determine if a prison regulation is reasonable: (1) whether there is a valid, rational connection between the regulation and "the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how accommodating the asserted constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation. Id. at 89–91 (citation omitted). The Supreme Court has also advised that when determining whether a prison regulation is reasonable, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003).

Plaintiff alleges that he has been denied all books, radios, publications, and newspapers from SMU. He states his grievances concerning these matters are still pending. (Dkt. No. 1, p. 5). Plaintiff filed a "Supplement" on June 14, 2013 which indicated, among other things, that beginning on May 21, 2012, radios and batteries were not permitted in SMU or in SMU lock-up bags. (Dkt. No. 77-1, p. 1). Citing to <u>Turner v. Safely</u>, 482 U.S. 78 (1987), he argues that a ban on all books, radios, publications, and magazines is "logically unrelated to the legitimate security concerns of prison officials." (Dkt. No. 63, p. 8). Some attachments were filed simultaneously with Plaintiff's "Supplement," (Dkt. No. 64-1, pp. 1-26), and consist of a number of different exhibits, including a copy of the SCDC

27

policy, effective May 21, 2012 banning radios and batteries in SMU or SMU lock-up bags. Plaintiff further argues that Defendant "does not oppose [the denial to access of general library] allegation, which includes a complaint that all radios are banned from SMU. Plaintiff maintains he is entitled to the relief requested because Defendants failed to oppose his claim. (Dkt. No. 82, p. 5).

A review of the notice reveals that effective May 21, 2012, radios and batteries would no longer be allowed in SMU or in SMU lock-up bags. Inmates who had those items were required to turn them over to SMU officers. A refusal to do so would result in a charge for contraband, and the items would be confiscated. (Dkt. No. 64-1, p. 12).

Courts have routinely upheld similar prison regulations. For example, in Beard, the Supreme Court upheld a policy that banned all access to newspapers, magazines, and photos. 548 U.S. at 533. Further, judges in this District who have examined the constitutionality of the SCDC ban on SMU prisoners' possession of newspapers have repeatedly concluded that this restriction does not violate prisoners' constitutional rights. See, e.g., Owens v. S.C. Dep't of Corrs., No. 09–278, 2009 WL 4807005, at * 8–9 (D.S.C. Dec. 8, 2009) (stating the defendants should be granted summary judgment on the plaintiff's First Amendment claim because in prior cases, the SCDC policy had been held to be rationally related to legitimate and neutral governmental objectives); Peoples v. Burtt, No. 07–2702, 2008 WL 2315865, at *6 (D.S.C. May 30, 2008) (holding SCDC Policy No. OP–22.12 was rationally related to legitimate and neutral governmental objectives); Koon v. Ozmint, No. 06–2000, 2007 WL 1486067, at *4 (D.S.C. May 18, 2007) (same); Corey v. Reich, No. 02–2801, 2004 W L 3090234, at *8 (D.S.C. Mar.9, 2004) (holding the plaintiff's claims as to restrictions on his ability to receive magazines, books, or other

materials was without merit); <u>see</u> <u>also</u> <u>Bryan v. S.C. Dep't of Corr.</u>, No. 07–21, 2009 WL 512158, at *5 (D.S.C. Feb.27, 2009) (stating the plaintiff's claim that a denial of books and legal materials violated his constitutional rights failed because the plaintiff failed to allege a specific injury resulting from the denial). The Court concludes that the restriction on the possession of books, radios, batteries, newspapers, and publications satisfies the standard articulated in <u>Turner</u>, and consequently, summary judgment should be granted in favor of Defendants as to Plaintiff's claim that the restriction of these materials violates his First Amendment rights.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Motion for Summary Judgment filed by Plaintiff (Dkt. No. 63) be DENIED. It is further RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 75) be GRANTED IN PART and DENIED IN PART. Specifically, the undersigned recommends denying summary judgment, without prejudice, on Plaintiff's claim of deliberate indifference to serious medical needs claim and Plaintiff's state law claims. The undersigned recommends granting summary judgment to Defendants on all other federal claims.

**IT IS SO RECOMMENDED**.

s/Bruce H. Hendricks
February 11, 2014                                             United States Magistrate Judge
Charleston, South Carolina


**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).