**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| ROBBIE COLLINS, No. 290946, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ANTHONY PADULA, *et. al.,* )<br>)<br>Defendants. )<br>) | No. 2:12-cv-03112-DCN<br><br><br><br>**ORDER** |

This matter is before the court on United States Magistrate Bruce Howe Hendricks' report and recommendation ("R&R") that the court deny plaintiff's motion for summary judgment and grant in part and deny in part the motion for summary judgment filed by the twenty-one defendants of record. For the reasons set forth below, the court adopts the report and recommendation in part, denies plaintiff's motion for summary judgment, and grants defendants' motion for summary judgment in its entirety. Because the court grants summary judgment in favor of defendants, it finds that defendant Nurse Norah's motion to amend or correct the answer is moot.

### I.  BACKGROUND

The court adopts the thorough recitation of this case's facts and procedural history as set forth in the R&R. For purposes of this order, it suffices to note that plaintiff Robbie Collins ("Collins") is a South Carolina state prisoner who, during the relevant time period, was housed in Lee Correctional Institution ("LCI") in Bishopville, South Carolina. Defendants are officials and staff members at LCI against whom Collins has asserted claims pursuant to 42 U.S.C. § 1983. Specifically, Collins asserts that defendants: (i) denied his right of access to the courts by failing to provide him access to

1

the prison law library; (ii) violated the Eighth Amendment by curtailing his ability to shower; (iii) violated his constitutional rights by denying him access to all books, publications, and radios; and (iv) violated the Eighth Amendment by showing deliberate indifference to his medical needs.

## II. STANDARDS OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which specific, written objections are made, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the responsibility of this court to make a final determination. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Collins appears pro se in this case. Federal district courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case. See Haines v. Kerner, 404 U.S. 519, 521 (1972). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a cognizable claim, nor does it mean the court can assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the ECF of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. Id. at 255.

### III.  DISCUSSION

The R&R recommends the following:  (i) summary judgment should be denied on procedural exhaustion grounds because defendants had not provided evidence showing the status of Collins' administrative grievances; (ii) summary judgment should be granted in favor of defendants on Collins' claim that he was denied access to the courts; (iii) summary judgment should be granted in favor of defendants on Collins' claim regarding the frequency of his showers; (iv) summary judgment should be granted in favor of defendants on Collins' claim regarding his access to books, publications, and radios; and (v) summary judgment should be denied on Collins' deliberate indifference claim because defendants had not provided evidence of any medical treatment that Collins may have received.

Neither Collins nor defendants object to the magistrate judge's first recommendation.  As noted above, the court may treat a party's failure to object as agreement with the conclusions of the magistrate judge.  See Thomas, 474 U.S. at 150. The court has reviewed the R&R and the record and agrees with the magistrate judge that genuine questions of fact exist regarding whether Collins exhausted his administrative

remedies before filing his complaint in federal court.[1]  As a result, the court adopts the magistrate judge's first recommendation without further comment.

What remains to be considered are the objections that the parties raise to each of the R&R's remaining recommendations.  The court considers these objections in turn.

### A.  Denial of Access to the Courts

Collins' complaint alleges that defendants denied him proper access to the courts by failing to give him timely access to law library materials.  In his objections, Collins continues to argue that the Supreme Court of South Carolina denied his post-conviction relief ("PCR") petition because defendants prevented him from complying with a request for additional information issued by the court.  Pl.'s Objections 1.

In Bounds v. Smith, 430 U.S. 817, 821 (1977), the United States Supreme Court explained that "prisoners have a constitutional right of access to the courts."  However, "Bounds did not create an abstract, freestanding right to a law library or legal assistance." Lewis v. Casey, 518 U.S. 343, 351 (1996).  A prisoner claiming a Bounds violation must show:  (i) that shortcomings in the prison's library or legal assistance program hindered his efforts to attack his sentence, directly or collaterally, or to challenge the conditions of his confinement; and (ii)  that he was actually injured as a result of these shortcomings. Lewis, 518 U.S. at 351-53, 355.

Even if the court were to assume that Collins had met the first prong of the Bounds test, this claim still fails because he has not shown that he was injured by denial of access to the prison law library.  The notice Collins received from the state high court explained that his PCR petition was both successive and untimely.  Had Collins

---

[1] The Prison Litigation Reform Act ("the PLRA") requires that a prisoner exhaust his administrative remedies before filing a § 1983 action in federal court.  42 U.S.C. § 1997e(a).

4

responded to the court's notice, there is no indication that the court would have granted his untimely, successive petition. See, e.g., Sheid v. U.S. Marshal Serv., No. 08-cv-03295, 2009 WL 1750379, at *10 (S.D. Tex. June 17, 2009) (holding that inmate failed to state a claim for denial of access to the courts where prison officials allegedly hindered his ability to file a time-barred federal habeas petition). As the magistrate judge recommends, summary judgment is appropriate on this claim.

### B. Conditions of Confinement – Showers

Collins' second claim relates to the frequency – or infrequency – of the showers he is permitted to take. In his objections, Collins continues to argue that defendants violated his rights because "he was only receiving a shower once a Month from June 2012 until Jan 2013 and in the Month of October received no Shower." Pl.'s Objections 2 (capitalization in original).

The Fourth Circuit has explained that "[p]rison conditions are unconstitutional if they constitute an 'unnecessary and wanton' infliction of pain and are 'totally without penological justification.'" Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990) (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). "The existence of merely harsh or restrictive prison conditions does not implicate the eighth amendment, as such conditions could be thought part of the penalty that criminals must pay, so courts must consider whether the deprivations alleged are of constitutional magnitude." Lopez, 914 F.2d at 490 (internal quotations omitted). Moreover,

> In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions.

5

Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).

Collins' claim regarding his limited opportunities to shower fails because it does not arise to the level of deprivation countenanced by the Eighth Amendment. Specifically, Collins has not alleged any serious or significant emotional or physical injury that has resulted from the infrequency of his showers. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (explaining that only "extreme deprivations" and deliberate indifference to "serious" medical needs will substantiate Eighth Amendment deliberate indifference or conditions-of-confinement claims); Catoe v. York Cnty. Det. Ctr., No. 13-cv-01655, 2013 WL 4499455, at *3 (D.S.C. Aug. 19, 2013) (collecting cases). As the magistrate judge put it, bathing opportunities may be severely reduced without violating a prisoner's constitutional rights. See, e.g., Shakka, 71 F.3d at 167-68 (finding no Eighth Amendment violation where prisoner was not allowed to shower for three days after having human excrement thrown onto him because he was provided water and cleaning materials); Davenport v. DeRobertis, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (finding no Eighth Amendment violation where inmates are allowed only one shower per week). Summary judgment in favor of defendants is also appropriate on this claim.

### C.  Conditions of Confinement – Book, publication, and radio ban

Collins also claims that he, as an LCI inmate housed in the prison's Special Management Unit ("SMU"), may not possess publications, radios, or books, and that this ban violates his First Amendment rights. In his objections, Collins continues to assert that this regulation is unconstitutional.

While inmates clearly retain constitutional protections, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a

6

retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal quotations omitted). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." Id. In Turner v. Safley, the United States Supreme Court identified four factors that courts consider when determining the reasonableness of a prison regulation: (i) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it;" (ii) "whether there are alternative means of exercising the right that remain open to prison inmates;" (iii) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (iv) "the absence of ready alternatives." 482 U.S. 78, 89 (1987) (internal citations omitted). When considering the constitutionality of prison regulations, courts are deferential to the choices made by prison administrators. Overton v. Bazzetta, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."). Federal courts are particularly deferential when evaluating state prison regulations. Turner, 482 U.S. at 84-85 ("Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities.").

Courts have routinely upheld restrictions similar to the ones about which Collins now complains. See, e.g., Beard v. Banks, 548 U.S. 521, 531-32 (2006) (holding that

7

prison policy banning SMU inmates from possessing newspapers, photographs, and magazines did not violate the Constitution); Pelzer v. McCall, No. 10-cv-01603, 2011 WL 4549387, at *5 (D.S.C. June 29, 2011) (holding that prison policy banning SMU inmates from possessing radios, batteries, newspapers, and magazines did not violate the Constitution), adopted by 2011 WL 4549368 (D.S.C. Sept. 30, 2011).  The court agrees with the magistrate judge that the prison's policies regarding books, newspapers, magazines, and radios in the SMU pass the Turner test.  As other courts have found, these bans further the legitimate goal of fire safety by lessening the amount of flammable material in inmates' cells.  These restrictions also increase inmate control and prison security, as prisoners have used radio batteries to make handcuff keys and have used paper from newspapers and magazines to block cell-viewing windows.  This objection also fails.

### D.  Deliberate Indifference to Medical Needs

Collins' final claim alleges that defendants were deliberately indifferent to his medical needs with respect to persistent ear infections that have left him partially deaf. Because defendants had not filed any evidence that addressed the treatment provided for Collins' ear infections, the magistrate judge recommended that summary judgment was inappropriate.  Defendants' objections to the R&R now address this issue at length, and attach twenty-eight pages of medical records in support of their argument that they have provided Collins with adequate medical care.

A prison employee who shows a "deliberate indifference to [the] serious medical needs" of a prisoner violates that prisoner's constitutional right to remain free from "the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976)

8

(citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  In order to establish a "deliberate indifference" to medical needs, plaintiff must demonstrate that defendant's treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).  Furthermore, "an inadvertent failure to provide adequate medical care" does not meet the standard required to claim an Eighth Amendment violation, nor does "mere negligence or malpractice."  Estelle, 429 U.S. at 105–06.

   "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."  Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988).  Prison officials implement the type and amount of medical treatment at their discretion.  See Allah v. Hayman, 442 F. App'x 632, 635 (3d Cir. 2011) (holding that deliberate indifference standard "requires much more" than taking issue with the "amount and kind of medical care" an inmate received); Johnson v. Doughty, 433 F.3d 1001, 1014 (7th Cir. 2006) (finding that a prison doctor who prescribed non-surgical means of treating an inmate's hernia was not deliberately indifferent to the inmate's medical needs where the doctor formed a professional opinion, other doctors agreed, and the inmate continued to have associated abdominal pain); Faison v. Rosado, 129 F. App'x 490, 492 (11th Cir. 2005) (noting that although a prisoner "might not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim").

   Prison medical personnel repeatedly treated Collins for his ear complaints, prescribing cortisporin eardrops on August 27 and September 26, 2012 and an oral antibiotic and VoSol ear drops on December 12, 2012.  Defs.' Objections Ex. 1 at 21, 26,

9

28. On March 20, 2013, Collins refused additional eardrops from medical personnel. Id. at 16. On April 9, 2013, medical personnel noted that "dark materal is noted in both ear." Id. at 14. On April 14 and 23, 2013, he was seen in the prison health clinic and was prescribed an antibiotic as well as an antihistamine. Id. at 14-15. A further examination by medical personnel on June 20, 2013 revealed that Collins had toilet paper in his ear canal. Id. at 12. Collins "admitted to wetting toilet paper and stuffing it into ear when it 'starts throbbing.'" Id. at 11. Collins again refused medication for his ears on July 22, 2013. Id. at 11. On August 9, 2013, a further exam revealed that Collins' "inner ear is reddened and appears raw," but Collins denied putting things in his ears. Id. at 9. On September 12, 2013, medical personnel again evaluated Collins' ears, this time referring him to outside specialist Dr. Alan Brill. Id. at 8. Collins was transferred to Lieber Correctional Institution sometime in the fall of 2013, and was seen by Dr. Brill in December 2013. Id. at 5.

Collins' medical records show that medical personnel at LCI treated his chronic ear infections time and again, despite the fact that he sometimes exacerbated the problems by refusing to comply with prescribed treatment. While the magistrate judge did not err in finding that questions of fact remained regarding Collins' deliberate indifference claim, the medical records recently submitted by defendants show that the medical care Collins received was adequate. Summary judgment in favor of defendants is appropriate.

## IV. CONCLUSION

For the reasons set forth above, the court **ADOPTS IN PART** the magistrate judge's R&R, ECF No. 110, and **GRANTS** defendants' motion for summary judgment,

ECF No. 75.  Because the court grants summary judgment in favor of the defendants, it **DENIES** plaintiff's motion for summary judgment, ECF No. 63, and **FINDS AS MOOT** defendant Nurse Norah's motion for to amend or correct the answer, ECF No. 116.

  **AND IT IS SO ORDERED**.

               _____
               **DAVID C. NORTON**
               **UNITED STATES DISTRICT JUDGE**

**March 31, 2014**
**Charleston, South Carolina**

11